# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ALU, INC., BOGEN IMAGING, INC. and
LINO MANFROTTO + CO. S.p.A.,**

                **Plaintiffs,**

**-vs-**                                **Case No.  6:06-cv-327-Orl-28DAB**

**KUPO CO., LTD.,**

                **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motions filed herein:

| |
|---|
| **MOTION:**    **PLAINTIFFS' MOTION TO ENTER A DEFAULT JUDGMENT AND PERMANENT INJUNCTION (Doc. No. 33)** |
| **FILED:**    **August 10, 2006** |
| _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. |
| **MOTION:**    **PLAINTIFFS' MOTION FOR ATTORNEY'S FEES (Doc. No. 29)** |
| **FILED:**    **July 21, 2006** |
| _____ |
| **THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part. |

Plaintiffs sued Defendant Kupo, Co., Ltd. ("Kupo"), a Taiwanese corporation, alleging unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a) of the common law trademark and trade dress for "SUPER CLAMP" and common law trade dress for the "AUTOPOLE2," and for claims under state law for trademark infringement, unfair competition and deceptive practices.  Doc. No. 1.  On March 22, 2006, Judge Antoon entered an Order granting Plaintiffs' Motion for Preliminary Injunction (Doc. No. 16) for the Global Shop trade show at the Orange County Convention Center in Orlando, Florida from March 26 to March 28, 2006 because thousands of distributor, retailers, customers and members of the public would be exposed to Kupo's infringing and unfairly competing products.  Doc. No. 16.  Plaintiffs also seek to recover $80,411.85 in attorney's fees and $5,194.38 in expenses.

**Background Facts and Procedural History**

Plaintiff Alu, Inc., Bogen Imaging Inc., and Lino Manfrotto +Co. S.p.A. are the owners, licensees and distributors of high-end retail display and photo/video lighting equipment.  Both Plaintiffs and Kupo planned to operate exhibition booths displaying several products at the Global Shop trade show in Orlando, Florida in March 2006.  Kupo's display of the "SUPERB CLAMP" and the "KUPOLE" would result in trademark infringement of Plaintiffs' "SUPER CLAMP" mark and trade dress infringement of the Plaintiffs' "SUPER CLAMP" and "AUTOPOLE2" products, which Judge Antoon found would lead to the public being confused and deceived by Kupo's products.  Doc. No. 16 at 2.

Specifically, he determined that the "SUPER CLAMP" mark would likely be confused with "SUPERB CLAMP" due to the similarity in appearance, in sound of the words, and trade dress.  Such similarity and likelihood of confusion extended to the confusing similar trade dress for the "SUPERB

CLAMP" and "KUPOLE" products, which are marketed and sold to the same industry, *i.e.*, the retail fixture display and photo/video lighting markets, in clear competition with Plaintiffs.  In addition, Judge Antoon found it likely that Plaintiffs would be able to prove Kupo's willful intent to infringe Plaintiffs' intellectual property because Kupo had previously been found in Germany to infringe the same marks and products at issue in this case.  Doc. No. 16 at 7.  Judge Antoon also found there to be a substantial threat of irreparable injury, that the injury to Plaintiffs outweighed that to Kupo, and that the public ought to be prevented from being confused.  Doc. No. 16.

On March 21, 2006, at the Preliminary Injunction hearing, Judge Antoon granted Plaintiffs' Motion for leave to Serve Pleadings by Alternative Means (Doc. No. 11), which allowed Plaintiffs to serve Kupo via fax, Federal Express International, and email.  Doc. No. 15.

Kupo, a Taiwanese corporation, with its only office known to Plaintiff located in San Chung, Taipei, Taiwan, had been successfully served with Plaintiffs' cease and desist letter via facsimile.  *See* Doc. No. 11 ¶ 5-6.  Plaintiffs subsequently served Kupo with the Motion for Preliminary Injunction and supporting papers via fax number where Kupo had previously acknowledged receipt of Plaintiffs' prior communications, via email designated on its website, and via Federal Express International at the corporate mailing address listed on its website.  Doc. No. 11 ¶ 7.  Plaintiffs also requested that the Clerk of Court serve the summons, complaint, and March 16, 2006 Order on Kupo at its corporate mailing address listed on its website in Taipei, Taiwan, by Federal Express International.  *See* Doc. No. 9, Plaintiffs' Certificate of Service & Airbill from U.S. District Court Clerk.  As such Kupo's answer was due April 10, 2006.

On August 8, 2006, the Clerk entered default against Kupo.  Doc. No. 32.  On August 8, 2006, Plaintiffs filed this Motion for Default Judgment and Permanent Injunction (Doc. No. 33), as well as

a Motion for Attorney's Fees (Doc. No. 29).  Kupo was not served with the Motion for Default Judgment because the Clerk had already entered default against it on August 8, 2006, for failing to respond to the Complaint.  *See* Fed. R. Civ. P. 5(a).  On August 8, 2006, Plaintiffs filed these motions for default judgment seeking a permanent injunction and to recover their attorney's fees.  Doc. Nos. 29 & 33.

Rule 4(h)(2) of the Federal Rules of Civil Procedure provides that service upon a corporation outside the United States may be made "in any manner prescribed for individuals by subdivision (f)." Fed.R.Civ.P.4(h)(2).  Rule 4(f), in turn, delineates the permissible methods of service upon individuals in foreign countries as either (1) by any internationally agreed means reasonably calculated to give notice, such as the Hague Convention[1]; or (2) if there is no international agreement, by service that is reasonably calculated to give notice; or (3) by other means not prohibited by international agreement as may be directed by the court.  Fed.R.Civ.R. 4(f)(1)-(3).

Plaintiffs obtained leave from Judge Antoon pursuant to Rule 4(f)(3) authorizing service on Kupo by fax (where Kupo had previously acknowledged receipt of Plaintiffs' prior communications), via email designated on its website, and via Federal Express International at the corporate mailing address listed on its website pursuant to Rule 4(f)(3).  Rule 4(f)(2) specifically authorizes service abroad "by mail" for which a signed receipt is required, when such mail is addressed and mailed by the clerk of the federal district court in which the suit is filed, unless prohibited by the law of the foreign country[2]. Fed. R. Civ. P. 4(f)(2)(C)(ii).  In this case, Plaintiffs had the Clerk prepare and send

[1]Taiwan is not a signatory to the Hague Convention.  *See, e.g., In re Schwinn Bicycle Co.,* 190 B.R. 599, 612 (Bkrtcy. N.D. Ill. 1995)).

[2]The State Department's website states that service of process in Taiwan can be effected by international registered mail/return receipt requested; however, if enforcement of a judgment is anticipated, Taiwan may not consider service by registered mail acceptable and may require that service be effected pursuant to a letter rogatory. See

the summons and Complaint via Federal Express International to Kupo at its corporate mailing address listed on its website in Taipei, Taiwan. *See* Doc. No. 9, Plaintiffs' Certificate of Service & Airbill from U.S. District Court Clerk.

The federal courts are split as to whether private courier services, such as Federal Express, constitute "mail" as that term is used in the Federal Rules of Civil Procedure 4 and 5, which pertain to service of process, and the Eleventh Circuit has not decided the issue definitively. *See Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1363 (11th Cir. 1997) (noting there are authorities supporting both positions that private courier services do and do not constitute "mail," but finding it unnecessary to decide the issue on the facts before it) (citing *Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1430-31 (9th Cir.1996) ("mailing" does not include use of private courier), *with United States v. 63-29 Trimble Rd.,* 812 F.Supp. 332, 334 (E.D.N.Y.1992) ("mailing" does include use of private courier); *see also NSM Music, Inc. v. Villa Alvarez,* 2003 WL 685338, *2 (N.D.Ill. 2003) (international service via Federal Express does not suffice as "mail" under the Federal Rules governing service); *but see Polargrid LLC v. Videsh Sanchar Nigam Ltd.,* 2006 WL 903184, *2 (S.D.N.Y. 2006) (clerk's mailing of the summons and complaint to defendant's Mumbai, India office via Federal Express on behalf of plaintiff was sufficient to effect service). At least one federal court (in the Ninth Circuit) has held that service by Federal Express on a Taiwanese corporation was valid, even though not by the prescribed method under Taiwanese law of letters rogatory, where service by international courier service was not expressly forbidden. *See Power Integrations, Inc. v. System Gen. Corp.*, 2004 WL 2806168 (D.C.Cal. 2004).

---

http://travel.state.gov/law/info/judicial/judicial_669.html.

Nonetheless, Plaintiffs' use of a private courier with regard to Rule 4(f)(2)(C) is not at issue because Plaintiffs obtained leave of court from Judge Antoon pursuant to Rule 4(f)(3) to serve Kupo by alternative means.  As the authors of the Federal Practice and Procedure Treatise explain:

> [This rule] permits service in a particular case to be tailored to the necessities of the situation when none of the other methods of service expressly provided for in the rule is satisfactory or likely to be successful.  It may be used for example, when there is a need for speed that cannot be met by following the Hague Convention methods . . . . The only proscription on the district court's discretion is that the method not be prohibited by international agreement. . . .[T]he due process requirements of reasonable notice and opportunity to be heard must be satisfied. . . . The use of a court-directed means for service of process under Rule 4(f)(3) is not a disfavored process and should not be considered extraordinary relief.

4B Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1134 (3rd ed. & Supp. 2006).

Plaintiffs filed a Notice a Federal Express International receipt reflecting service of the summons and complaint which had been dispatched by the Clerk of Court of the Middle District to Kupo.  Doc. No. 24.  Plaintiffs filed a receipt of service from Federal Express (Doc. No. 24-2), as required by Rule 4(*l*), showing delivery on "No. 4 609L Ch. Rd. Sec5 6F" in San Chung Paipei, Taiwan.  *See* Doc. No. 24-2.[3]  In addition, Plaintiffs have filed proof that a Kupo manager was served while in Orlando while attending the Global Trade Show.  Plaintiffs filed a Notice of Filing affidavits of service showing that "Jack Chen, Assistant Manager of defendant corporation" was served by the process server at the Orange County Convention Center on March 25, 2006.  Doc. No. 27.

---

[3]Although the Recipient is listed as "James Yeh, President," the signature block is signed, "Candy" and the typed material says the delivery was "signed for by: S.Candy" without elaboration as to S. Candy's position. If KUPO were to subsequently challenge the default judgment in an adversarial context, the capacity of the signor may be an issue. *See, e.g., Taylor v. Stanley Works,* 2002 WL 32058966, *6 (E.D. Tenn. 2002) (holding that plaintiffs had not met their burden of showing that they effected proper service of process via delivery through Federal Express where the delivery was received and signed for by a person only identified as "V. Perry" and there was no proof or explanation in the record as to what position of authority or employment that person held at defendant corporation).

It is respectfully **RECOMMENDED** that Plaintiffs' Motion for Default Judgment and Permanent Injunction be **GRANTED**, continuing the relief originally set forth in Judge Antoon's Preliminary Injunction (Doc. No. 16 § VII (Relief Granted) ¶¶ 1-3) and as set forth in Plaintiffs' proposed Permanent Injunction (Doc. No. 33-2 at 2 ¶¶1-3) and dissolving and discharging the $20,000 bond posted by Plaintiffs.

**Attorneys' Fees and Costs**

Plaintiffs seek to recover attorneys' fees incurred in obtaining the preliminary injunction, final injunction and default judgment.   The Court finds that Kupo's failure to timely respond to the Complaint and subsequent entry of default serve to admit the well-pled allegations of the Complaint. Thus, Plaintiffs are the entitled to attorneys' fees on their claims against Kupo for its willful and intentional trademark infringement under the Lanham Act, pursuant to 15 U.S.C. § 1117.  *See Neva, Inc. v. Christian Duplications International, Inc.,* 743 F. Supp. 1533, 1543-44 (M.D. Fla. 1990).  As an additional basis, Plaintiffs are also entitled to an award for Kupo's deceptive and unfair trade practices in violation of Florida law.  *See* Fla. Stat. § 501.2105; *GMAC v. Laesser*, 791 So.2d 517 (Fla. 4th DCA 2001), *rev. denied*, 817 So.2d 848 (Fla. 2002).

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation.  *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985).

Factors to be considered when setting a fee include:  1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4) preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds, Blanchard v. Bergeron,* 489 U.S. 87 (1989).  The going rate in the community is the most critical factor in setting the fee rate.  *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990).

Plaintiff seeks to recover  $80,411.85 in attorney's fees for 295 hours of billable time and $5,194.38 in expenses.  Plaintiff's lead counsel, Fred H. Perkins, avers that he spent 120 hours of time prosecuting this matter, at an hourly rate of $445.50 per hour; his partner, Michael Martell, spent 9.7 hours of time prosecuting this matter, at an hourly rate of $337.50 per hour; his associate, Shailendra Maheshwari, spent 73.3 hours of time prosecuting this matter, at an hourly rate of $247.50; and various paralegals spent 13.0 hours at a rate of $130.00 per hour.  Doc. No. 29-4.  In addition, local counsel, Gregory W. Herbert, avers that he spent 75 hours of time prosecuting this matter, at an hourly rate of $350.00 per hour.[4]  Doc. No. 29-3.  An affidavit from an experienced local attorney, Dan Johnson, familiar with the Orlando market, recommends somewhat reduced billing rates and a ten percent reduction in the number of compensable hours. Doc. No. 29-4.

---

[4]To his credit, Mr. Herbert discounted his final charges to his client resulting in a billable hourly rate of approximately $250 per hour, and wrote off 4.25 hours of paralegal time.  Doc. No. 29-3 n.3.

As to the reasonable number of hours, counsel has presented an itemized list of the services provide by his firm in support of the 295 hours they argue are compensable.  As to the complexity of the matters in the case, counsel contends, "This case involved numerous legal issues related to the trademark, trade dress and patent infringement of Plaintiffs' products and intellectual property by [Kupo] and was pursued under an expedited time frame [before the] Global Shop trade show. . . This trade show is the largest and most well attended trade show in the display and retail fixture industry."  Doc. No. 29-2 ¶ 5.

With the above principles in mind, a review of the itemization provided for these hours does not indicate that appropriate billing judgment was used.  The Court is strongly of the opinion that the requested fees are excessive in a case determined by default, even considering issues associated with service of process against a foreign corporation and the exigencies caused by the imminent Global Trade Show.  The legal issues in this case, while calling for some degree of specialization, are not arcane and the proceedings leading to a preliminary injunction and default judgment are ordinary parts of federal court litigation.

Counsel successfully moved for and obtained an order allowing alternative service of process, avoiding the complicated processes required by other international treaties or service agreements.  Counsel prepared for and successfully obtained a preliminary injunction[5] at a hearing before Judge Antoon; however, that (uncontested) preliminary injunction hearing consisted of just one hour on March 21, 2006.  *See* Doc. No. 14.  Billing entries for March 21, 2006 show 9.5 hours billed by Mr. Perkins, and approximately 6 hours billed by Mr. Herbert, not to mention additional paralegal time.  It is not clear whether Mr. Perkins' entry included his travel time from New York, which would not

---

[5]Plaintiff's request for a temporary restraining order was denied.

be reimbursable. Travel time is not properly visited on one's adversary, absent a showing of a lack of qualified local counsel. Such a showing has not been made here.

Many of the other entries in support of Mr. Perkins affidavit are vague as to the issue being researched or relevant discussion and merely describe the communication sent, such as "emails to" or "conversation with." *See* Doc. No. 29-2 at 6-12. The Court is unable to determine whether the efforts expended were necessary to obtain what was a straightforward default judgment.[6] There also has been no justification for the large number of legal professionals billing time in this case. Having so many people involved necessarily creates duplication as they communicate and review and revise each other's work.

Although Plaintiffs argue that the likelihood of confusion at the Global Trade Show would have been significant if Kupo had not been enjoined, the bond proposed was only $20,000, which is a reflection of the size of any anticipated lost profits, etc. to be experienced by the enjoined party. Thus, it does not appear that the case was of such significance as to justify the number of attorneys and hours devoted to the case.

The Court cannot find any fee in excess of $12,000 to be reasonable based on the lack of complexity of the case, even allowing for service on the foreign defendant and the expedited nature of the (unopposed) preliminary injunction hearing. "Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness." *Farrar v. Hobby,* 506 U.S. 103, 115 (1992).

It is respectfully **RECOMMENDED** that Plaintiffs be awarded total attorneys' fees of $12,000.

_____

[6]Plaintiff's first motion for a default judgment was denied (Doc. No. 30) because no default had been sought.

**Costs and expenses**

Plaintiffs seek to recover costs and expenses including meals, "travel", telephone, document reproduction, mail, messenger, overtime, court reporter services, and "miscellaneous." A prevailing party is entitled to recover only those costs allowed pursuant to 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987). While some of the costs listed by Plaintiffs are allowable pursuant to 28 U.S.C. § 1920, others are either not allowable because they are part of firm overhead or are not adequately unexplained. For example, fees of the court reporter "for all or any part of the stenographic transcript *necessarily obtained* for use in the case" are taxable. 28 U.S.C. § 1920(2); *see E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 620-21 (11th Cir. 2000) (emphasis added). Plaintiffs have made no showing that any transcripts, copies, or other expenses incurred were necessary, aside from the $250.00 filing fee.

Moreover, allowable costs are to be taxed by the Clerk upon presentation of a bill of costs (Fed. R. Civ. P. 54(d)(1)). Costs thus taxed may be reviewed by motion by any party. Accordingly, to the extent Plaintiffs seek to recover their costs through this Motion, it is respectfully **RECOMMENDED** that it be denied without prejudice to Plaintiffs filing a bill of costs within seven days of any order adopting this recommendation.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 15, 2006.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

-11-

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy